**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.G., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Tucson Unified School District,<br><br>    Defendant. | No. CV-18-00583-TUC-JGZ (MSA)<br><br>**REPORT AND RECOMMENDATION** |

This matter is on referral pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. Pending before the Court is Defendant Tucson Unified School District's motion for partial summary judgment. (Doc. 45.) The motion has been fully briefed. (Docs. 48, 52.) Oral argument was held on May 26, 2020. (Doc. 60.) For the following reasons, the Court will recommend that the motion be granted.

**I.    Background**[1]

In 2017, Plaintiff Jane Doe was a student at Mansfeld Middle School, where John Angel Corral was employed as a security monitor. (DSOF ¶¶ 1–3.) Jane Doe's interactions with Corral began as small talk and high-fives. (DSOF ¶ 2.) According to Jane Doe, starting in August 2017, these interactions escalated into "side hugs" and "bear hugs." (DSOF ¶ 3.) During the bear hugs, Corral touched the top of Jane Doe's buttocks. (DSOF

---

[1] The following facts are undisputed. "DSOF" refers to the Defendant's separate statement of facts. (Doc. 46.) "PSOF" refers to the Plaintiffs' controverting statement of facts. (Doc. 49.) All other record citations refer to the page numbers electronically generated by the Court's filing system, not to the original page numbers in the documents cited.

¶ 4.) These interactions occurred in the school hallway during Jane Doe's 30-minute advisory period (a time during which she could eat, use the restroom, or complete schoolwork) and only when Jane Doe was alone. (DSOF ¶¶ 6–8.)

Jane Doe's last contact with Corral occurred on October 26, 2017. (DSOF ¶¶ 10, 12.) Jane Doe was standing on a chair just outside her classroom, hanging decorations, when Corral approached and attempted to make conversation. (DSOF ¶ 10.) According to Jane Doe, Corral then touched her inner thigh. (DSOF ¶ 11.) When Jane Doe pulled away, Corral grabbed for an ear-bud headphone that was dangling below Jane Doe's waist. (DSOF ¶ 11.) Jane Doe was then called back into the classroom. (DSOF ¶ 11.) Prior to this incident, Jane Doe did not tell anyone about Corral's conduct. (DSOF ¶ 13.)

Prior to 2017, Corral had been accused on three occasions of sexually harassing students. (PSOF ¶¶ 3, 5, 10.) Corral's employment was not terminated after any of the other incidents, two of which he was arrested for. (PSOF ¶¶ 5, 7, 9, 13.)

Plaintiffs D.G. and Y.G. are the parents of Jane Doe and John Doe. (Doc. 1-1 at 3.) They brought this lawsuit on behalf of themselves and their children, alleging various federal- and state-law claims arising from the sexual harassment of Jane Doe. (*Id.* at 2–7.)

**II.     Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. *Id.* In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the nonmovant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). A reasonable inference is one which is supported by "significant probative evidence" rather than "threadbare conclusory statements." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985). If "the evidence yields conflicting inferences [regarding material

facts], summary judgment is improper, and the action must proceed to trial." *O'Connor*, 311 F.3d at 1150.

The party moving for summary judgment bears the initial burden of identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and emphasis omitted); *see also* Fed. R. Civ. P. 56(c)(1).

### III. Federal-Law Claims

Plaintiffs raise two federal-law claims. First, they allege that Defendant deprived Jane Doe of her constitutional right to bodily integrity in violation of 42 U.S.C. § 1983. Second, they allege that Defendant deprived Jane Doe of the benefits of her education in violation of 20 U.S.C. § 1681(a) ("Title IX"). Defendant contends that it is entitled to summary judgment on both claims. For the following reasons, the Court agrees.

#### A. Section 1983

"Section 1983 allows a party to bring a civil action for constitutional deprivations against persons acting under color of state law." *Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir. 1981). Municipalities and other local governmental bodies, including school districts, are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original). A municipality may be held liable under § 1983 only where its "policy or custom" is "the moving force" of the violation. *Id.* at 694.

This liability arises in three ways. *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018). Relevant here, a municipality may be held liable if it was deliberately indifferent to the rights of those who come into contact with its employees.[2] *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Plaintiffs contend

---

[2] A municipality may also be held liable if the unconstitutional act implemented an official policy or unofficial custom, *Monell*, 436 U.S. at 690–91, or if the act was

- 3 -

that Defendant's "policy and custom, as demonstrated at least three times in the case of John Corral, is to allow employees who are accused of sexual harassment against students to continue their employment and to continue interacting with students." To succeed on this claim, Plaintiffs must establish, among other things, that Defendant in fact had the alleged policy or custom, and that the policy or custom amounted to deliberate indifference to Jane Doe's constitutional rights. *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005) (quoting *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004)).

Defendant contends there is no evidence that it had a policy or custom of not terminating employees accused of sexual harassment, or of allowing such employees to interact with students. This argument is sufficient to shift the summary-judgment burden to Plaintiffs. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) ("[A] moving defendant may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing'—that is, pointing out through argument—the absence of evidence to support plaintiff's claim."). To survive summary judgment, Plaintiffs must demonstrate that a reasonable jury could conclude that Defendant had the alleged policy or custom. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

During oral argument, Plaintiffs conceded that Defendant did not have an official policy. The Court would have reached the same conclusion even absent this concession. Unsurprisingly, there is no evidence in the record that Defendant ever adopted a policy to place students around employees who had been accused of sexual harassment. A school district cannot formally adopt policies that authorize or encourage the sexual harassment of students. *See Plumeau v. Yamhill Cty. Sch. Dist. No. 40*, 907 F. Supp. 1423, 1437 (D. Or. 1995) ("In fact, the District did not and could not have an official policy which allowed District employees to perpetrate criminal sexual abuse on minor schoolchildren."); *see also*

---

committed or ratified by a municipal policymaker, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (plurality opinion). Plaintiffs have not argued that Corral harassed Jane Doe pursuant to a policy or custom authorizing harassment, that Corral was a policymaker whose acts constituted official policy, or that Corral's conduct was ratified by a policymaker.

- 4 -

*Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) ("Clearly, the city did not have a formal policy condoning or endorsing sexual harassment or sexual assault by City employees."). Furthermore, the record contains evidence that prior district administrations had official policies directed at preventing employee-on-student harassment. (Doc. 49-1 at 58–59.) It cannot reasonably be inferred from this evidence that Defendant also had a policy of allowing alleged sexual harassers to interact with students.

Even though there was no official policy, Defendant can still be held liable if it had an unofficial custom or practice that amounted to deliberate indifference. *See Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1995). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc)). "A pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to [act]." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Based on a history of accusations against Corral, Plaintiffs argue that a reasonable jury could determine that Defendant had a widespread custom of deliberate indifference. The first incident occurred in January 2000, while Corral was employed at Pueblo Magnet High School. (Doc. 49-1 at 6, 17.) The school incident report states that Corral "made sexual advances toward" a female student and "[t]ried to blackmail her for sexual favors." (*Id.* at 17.) Corral was not questioned about the incident, placed on administrative leave, or disciplined in any way. (*Id.* at 10.)

The second incident occurred in August 2002, again while Corral was employed at Pueblo Magnet High School. (*Id.* at 6, 37–40.) Corral was arrested for this incident. (*Id.* at 23–24.) The police report states that Corral asked a female student if she could keep a secret, as he had keys to every door in the school if she wanted to do "something." (*Id.* at 38.) When the student asked, "something like what," Corral stated that he wanted her to

perform oral sex. (*Id.*) Corral also told the student that she had become "thick" over the summer, that she had "a nice ass," and that he wanted a picture of her in a bikini. (*Id.* at 39.) In response to the incident, Defendant placed Corral on paid administrative leave pending an investigation. (*Id.* at 11, 42.) After several weeks on administrative leave, Corral was called back to work. (*Id.* at 11–12.)

The third incident occurred in December 2008, while Corral was employed at Hohokam Middle School. (*Id.* at 26–27, 44–56.) Corral was arrested for this incident. (*Id.* at 49.) According to the sheriff's report, the school principal received information that Corral had made "inappropriate sexual comments" to a 14-year-old female student. (*Id.* at 50.) The student reported to law enforcement investigators that Corral had told her she was "cute" and would be "finer" when she became older. (*Id.* at 51.) The student also accused Corral of whispering, "fuck me," in her ear. (*Id.*) In response to the incident, Defendant issued Corral a written reprimand and placed him on paid administrative leave pending an investigation. (*Id.* at 58.) At the conclusion of the investigation, Defendant determined that Corral had violated the governing board's policies regarding suggestive, obscene, sexual, and harassing conduct towards students. (*Id.* at 58–59.) Corral was instructed to attend a pre-termination hearing on September 1, 2009. (*Id.* at 58.) However, following the dismissal of his criminal charge (because the witness did not appear), Corral was reinstated and placed at Mansfeld Middle School. (*Id.* at 14–15.)

Defendant's responses to these incidents are, to say the least, troubling. However, even assuming the responses constitute deliberate indifference, Plaintiff's evidence is insufficient as a matter of law to establish a *custom* of deliberate indifference. The evidence is that one person sexually harassed three female students over a period of 16 years. These incidents were too sporadic, and their number too few, for a reasonable jury to conclude that retention of sexual harassers was a custom "so 'persistent and widespread' that it constitute[d] a 'permanent and well settled [municipal] policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). Federal courts consistently hold that similar numbers of incidents are insufficient to establish a custom. *See Flores v. County of Los Angeles*,

758 F.3d 1154, 1157, 1159 (9th Cir. 2014) (three incidents over two years); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents over four months); *Grieveson v. Anderson*, 538 F.3d 763, 767, 774–75 (7th Cir. 2008) (four incidents over 11 months); *Jones v. Muskegon County*, 625 F.3d 935, 946–47 (6th Cir. 2010) (five incidents over eight years); *see also Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice." (citation omitted)). Furthermore, Plaintiffs have presented no evidence that Defendant has responded similarly to accusations of sexual harassment made against other employees. *See Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam) (holding the plaintiff could not establish a municipal custom in part because there was no evidence the plaintiff's employer had similarly mistreated other employees).

Plaintiffs also present the testimony of Dr. Gabriel Trujillo, Defendant's current superintendent. Dr. Trujillo's testimony, essentially, is that any one of the prior incidents would have resulted in termination of employment had it occurred during the current administration. (Doc. 49-1 at 21, 24–25.) The relevance of this evidence is not readily apparent. Granted that the current administration would have fired Corral, it does not follow that prior administrations retained Corral pursuant to a municipal custom that protected those accused of sexually harassing students.

Plaintiffs have conceded that Defendant did not have an official policy. And the few incidents highlighted by Plaintiffs "do not come close to establishing the kind of pervasive custom that would give rise to liability under . . . *Monell*." *Wilson*, 742 F.3d at 780. Therefore, the Court will recommend that summary judgment be granted in favor of Defendant.

  **B.**  **Title IX**

There are two types of claims under Title IX: "individual" claims and "pre-assault" claims. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105, 1112 (9th Cir. 2020). Defendant argues that Plaintiffs are unable to establish either theory. The Court agrees.

### 1. Individual Claim

For an individual claim, one element the plaintiff must prove is that "a school official with 'authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf'" had "actual knowledge" of the plaintiff's harassment. *Karasek*, 956 F.3d at 1105 (quoting *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000)). Defendant argues there is no evidence it had actual knowledge that harassment of Jane Doe was occurring. In support of its argument, Defendant points to Jane Doe's testimony that she did not report Corral's conduct until after the final thigh-touching incident. (Doc. 46-1 at 12.) This testimony is persuasive evidence that Plaintiffs cannot establish an element of their claim. Therefore, Defendant has met its burden of production and shifted the burden to Plaintiffs.

Plaintiffs do not respond with evidence that Defendant had actual knowledge of Jane Doe's harassment. Instead, they focus on evidence that Defendant knew, based on the history of accusations against Corral, that Corral was likely to harass female students generally. However, this evidence is not relevant to an individual claim. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (knowledge that a teacher made inappropriate comments during class was insufficient to show actual knowledge that the teacher was having a sexual relationship with a student). As Plaintiffs have not established a genuine dispute of material fact, the Court will recommend that summary judgment be granted in favor of Defendant.

### 2. Pre-Assault Claim

For a pre-assault claim, a plaintiff must prove, among other things, that the "school maintained a policy of deliberate indifference to reports of sexual misconduct." *Karasek*, 956 F.3d at 1112. She must also prove that, "as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.'" *Id.* (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

**(a)  Severe, Pervasive, and Objectively Offensive Harassment**

Defendant argues that the harassment of Jane Doe was not sufficiently severe, as it "occurred only in a public area," "spanned at most a few weeks," and ended with a single thigh-touching incident. Defendant also asserts that Jane Doe was able to avoid Corral for at least several weeks before the thigh-touching incident. However, these arguments are based on an interpretation of the evidence that is most favorable to Defendant. Viewing Defendant's evidence in the light most favorable to Plaintiffs, there is a triable issue regarding the severity of Jane Doe's harassment.

Defendant presents much of the transcript of Jane Doe's deposition. Jane Doe testified that Corral made peculiar statements to her, including, "You can tell me your secrets," "I'm going to miss you when you're gone," and "You are my favorite." (Doc. 46-1 at 6.) She also testified that, in late August 2017, Corral escalated his conduct from small talk and high-fives to side hugs, and then to bear hugs. (*Id.* at 11–12.) She stated that, on multiple occasions, Corral touched the top of her buttocks during the bear hugs. (*Id.* at 8.) Although Jane Doe could not recall how many times Corral did this, she testified that it "felt like every day" from late August through September and October. (*Id.* at 9, 12.) Jane Doe also testified that Corral hugged her only when no one else was around. (*Id.* at 13–14.) Finally, Jane Doe stated that, during her final interaction with Corral, he touched the inside of her thigh approximately "an inch away" from her vagina. (*Id.* at 9.)

The evidence is that Corral, an adult, frequently touched Jane Doe, an eighth-grade student, in an inappropriate manner when no one else was around. Based on the totality of the circumstances, including, especially, Jane Doe's youth, a reasonable jury could determine that Jane Doe experienced severe, pervasive, and objectively offensive sexual harassment. *See Davis*, 526 U.S. at 651 (stating that relevant factors include "the ages of the harasser and the victim"). Additionally, Jane Doe reported that she was scared to return to school while Corral was there, and that, in addition to using the restroom at different times, she avoided Corral by not going to school regularly. (Doc. 46-1 at 11, 14.) Based on this evidence, a reasonable jury could also determine that Corral's conduct deprived

Jane Doe of the educational opportunities and benefits provided by the school.  *See Karasek*, 956 F.3d at 1105.

In denying that the harassment was sufficiently severe, Defendant points to a police report, which states that Corral touched Jane Doe's buttocks on only one occasion.  (*See* Doc. 46-1 at 7.)  However, Jane Doe testified that the police report is inaccurate, as she reported that Corral touched her buttocks on multiple occasions.  (*Id.* at 8.)  It would be improper to resolve this conflict in Defendant's favor and then use that finding to support a grant of summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

Next, Defendant analogizes this case to *Cubie v. Bryan Career College, Inc.*, 244 F. Supp. 2d 1191, 1203–04 (D. Kan. 2003), where the district court found that four instances of touching, including one thigh-touching incident, did not constitute severe and pervasive harassment.  *Cubie* is easily distinguishable, however, because the victim in that case was 27 years old, and the case involved fewer instances of inappropriate touching.  *Id.* at 1193; *see Davis*, 526 U.S. at 651.  Defendant also argues that the harassment was insufficiently severe because it occurred in a public hallway. But, again, Jane Doe testified that Corral hugged her only if no one else was around.  A reasonable jury could conclude that the age difference between Corral and Jane Doe created a lopsided power dynamic, and that it was made worse by the absence of bystanders.

Finally, Defendant argues that the harassment lasted only a few weeks.  There does appear to be a conflict or inconsistency in Jane Doe's testimony about the duration and frequency of the harassment.  However, it is possible that Jane Doe misunderstood what was being asked; indeed, she exhibited significant confusion when asked about the timing of Corral's first bear hug.  (*See* Doc. 46-1 at 7.)  In any event, Jane Doe's credibility is not for the Court to determine on summary judgment.  *Anderson*, 477 U.S. at 255.  As noted above, she testified that the harassment "felt" like it was occurring "every day" for a period of months.  A reasonable jury could rely on that testimony to determine that the harassment

was sufficiently severe.

### (b)  Policy of Deliberate Indifference

Defendant argues that the prior incidents involving Corral are insufficient as a matter of law to establish a policy of deliberate indifference, as the number of incidents is too few, and the evidence shows that Defendant investigated and disciplined Corral. At most, Defendant says, its conduct was negligent. By arguing there is an absence of evidence supporting Plaintiffs' claim, Defendant has met its burden of production and shifted the burden to Plaintiffs. *Fairbank*, 212 F.3d at 532. Accordingly, Plaintiffs must show there is a genuine dispute as to whether Defendant maintained a policy of deliberate indifference to reports of sexual harassment. *Nissan Fire*, 210 F.3d at 1103. To make this argument, Plaintiffs again rely on evidence of Corral's prior misconduct. They argue a reasonable jury could conclude that Defendant had a policy of deliberate indifference, since Defendant did not terminate Corral's employment or implement measures to prevent future harassment.

However, even assuming Defendant's response to each incident was deliberately indifferent, Plaintiffs have not presented enough evidence for a reasonable jury to conclude that Defendant had a *policy* of deliberate indifference. Plaintiffs argue that this alternative theory of Title IX liability is analogous to § 1983 liability, under which a municipality may be held liable for maintaining a policy or custom that causes injury. *See Monell*, 436 U.S. at 690–91. As previously explained, though, three incidents over a period of 16 years are insufficient to establish a district policy or custom.

In the context of a pre-assault claim, the allegations in *Karasek* provide some indication of what may be sufficient. There, the plaintiffs relied on "a 2014 report prepared by the California State Auditor detailing several deficiencies in [the school's] handling of sexual-harassment cases between 2009 and 2013," "an administrative Title IX claim filed in 2014 by thirty-one women, alleging that [the school] ha[d] not adequately responded to complaints of sexual assault since 1979," and "alleg[ations] that [the school] resolved a majority of sexual-assault complaints with informal processes, even though . . . only formal

processes should be used in cases of sexual assault." *Karasek*, 956 F.3d at 1103; *see also Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1181–84 (10th Cir. 2007). *Karasek* clearly does not set the minimum bar for bringing a pre-assault claim. But even assuming (if the allegations are true) that *Karasek* is the extreme example of a policy of deliberate indifference, Plaintiffs' evidence of three incidents still falls short of the mark.

Plaintiffs have not shown that a reasonable jury could determine that Defendant had a policy of deliberate indifference towards employee-on-student sexual harassment. The Court will recommend that summary judgment be granted in favor of Defendant.

**IV.  State-Law Claims**

Plaintiffs also raise several state-law claims. First, John Doe, D.G., and Y.G. individually allege that each has lost the consortium of Jane Doe as a result of Defendant's conduct. Second, Plaintiffs allege that Defendant is liable under various negligence theories. Defendant seeks summary judgment only on the loss-of-consortium claims. For the following reasons, the Court agrees that summary judgment should be granted.

**A.  John Doe's Loss-of-Consortium Claim**

Defendant contends that it is entitled to summary judgment because John Doe's loss-of-consortium claim is not cognizable in Arizona. This is an accurate statement of the law. *Kaufman v. Langhofer*, 222 P.3d 272, 279 (Ariz. Ct. App. 2009) (noting there is no cognizable claim for loss of a sibling's consortium). As John Doe and Jane Doe are siblings, the Court will recommend that summary judgment be granted in favor of Defendant.

**B.  D.G.'s and Y.G.'s Loss-of-Consortium Claims**

"Loss of consortium . . . is defined as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support." *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). Parents may bring a claim "for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way." *Id.* (citing *Villareal v. Ariz. Dep't of Transp.*, 774 P.2d 213, 219 (Ariz.

1989)). The injury can be psychological and need not be "catastrophic." *Id.*; *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998). Before a loss-of-consortium claim may be presented to a jury, the court must determine as a matter of law "[w]hether the threshold of a significant interference with the normal relationship between parent and child has been met . . . ." *Pierce*, 782 P.2d at 1165.

Defendant passingly argues that Jane Doe has not suffered a sufficiently severe injury, but its primary contention is that there is no evidence Jane Doe's injury has substantially interfered with the parent-child relationship. To support its argument, Defendant quotes a lengthy excerpt from the transcript of Jane Doe's deposition. There, Jane Doe testified that she has a "good relationship" with both of her parents; that she and her parents love each other and say so; that she enjoys going to movies and dinners with her family, which she does often; that her mother is her best friend, with whom she communicates every day; and that she is comfortable around her father and communicates with him every chance she has.[3] (Doc. 46-1 at 3–5.) This testimony is persuasive evidence that D.G. and Y.G. cannot satisfy the substantial-interference element of their claims, as it appears they maintain a normal relationship with Jane Doe. *See Miller v. Westcor Ltd.*, 831 P.2d 386, 394 (Ariz. Ct. App. 1991) ("The focus of the trial court's inquiry is on the interference with the normal relationship between parent and child."). Accordingly, Defendant has met its burden of production, and Plaintiffs bear the burden to show the existence of a genuine dispute of material fact. *Nissan Fire*, 210 F.3d at 1103.

Plaintiffs contend that summary judgment should be denied because both Jane Doe and her parents "testified that their relationship has changed." As their sole example of such testimony, Plaintiffs cite a statement by Jane Doe that she could not hug her father for one year. (Doc. 49-1 at 66.) Plaintiffs do not specify in their briefing what testimony by D.G. and Y.G. supports their argument. Next, Plaintiffs highlight the opinion of a consulting psychologist that Jane Doe is "at risk to re-experience emotional symptoms, behavioral and psychosocial issues, and adverse medical problems throughout her

---

[3] Jane Doe sees her father less frequently because he works night shifts. (Doc. 46-1 at 4.)

adulthood." (*Id.* at 74.) According to Plaintiffs, a reasonable jury could rely on this evidence to find in their favor.

Plaintiffs, however, have not shown there is a triable issue. Defendant has shown that Jane Doe enjoys spending time with her parents and that she does so often, that Jane Doe and her parents communicate their affection for each other, and that Jane Doe believes she has a "good relationship" with both parents. This evidence convincingly demonstrates that although Jane Doe has suffered emotional trauma, she nevertheless is capable of exchanging—and she does exchange—"love, affection, society, companionship, comfort, care and moral support" with her parents. *Pierce*, 782 P.2d at 1165.

Plaintiffs' evidence does not indicate otherwise. Jane Doe's inability to hug her father for one year did not substantially interfere with the parent-child relationship, as that manifestation of trauma was temporary—Jane Doe is able to hug her father again. (Doc. 49-1 at 66.) Additionally, Y.G.'s and D.G.'s testimony (which is not discussed in Plaintiffs' briefing) does not save their claims. Each testified primarily about his or her personal reaction to Jane Doe's injuries, not about changes to the parent-child relationship.[4] Finally, the consulting psychologist's opinion that Jane Doe is at risk of future injuries says nothing about the parent-child relationship, which, again, Jane Doe believes is good.

There is no genuine dispute that Jane Doe's injuries did not substantially interfere with her capacity to have a normal relationship with her parents. The Court will recommend that summary judgment be granted in favor of Defendant.

**IT IS RECOMMENDED** that Defendant Tucson Unified School District's motion for partial summary judgment (Doc. 45) be **granted**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties shall have fourteen

---

[4] Y.G. testified that she suffered anxiety attacks, depression, and loss of sleep, and that she became "socially withdrawn from friends and family" at times. (Doc. 49-1 at 81–83.) D.G. testified that he suffered loss of sleep and feelings of helplessness, anger, and guilt. (*Id.* at 86–88.)

days within which to file responses to any objections. Failure to file timely objections to this recommendation may result in the acceptance of the recommendation by the district court without de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 27th day of July, 2020.

*Maria S. Aguilera*
Honorable Maria S. Aguilera
United States Magistrate Judge