**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| D.G., et al., | No. CV-18-00583-TUC-JGZ (MSA) |
| Plaintiffs, | **ORDER** |
| v. | |
| Tucson Unified School District, | |
| Defendant. | |

Pending before the Court is Magistrate Judge Maria S. Aguilera's Report and Recommendation (R&R) recommending that the District Court grant Defendant Tucson Unified School District's (TUSD) Motion for Partial Summary Judgment. (Doc. 61.) Plaintiffs filed an objection to the Report, and request do novo review of the motion. (Doc. 64.) TUSD filed a response. (Doc. 65.)

After an independent review of the parties' briefing and of the record, the Court will adopt Magistrate Judge Aguilera's recommendation in part, granting summary judgment on the 42 U.S.C. § 1983 and loss-of-consortium claims and denying summary judgment on the Title IX claim.

## STANDARD OF REVIEW

When reviewing a Magistrate Judge's Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not

otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Further, a party is not entitled as of right to de novo review of evidence or arguments which are raised for the first time in an objection to the report and recommendation, and the Court's decision to consider newly-raised arguments is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621-622 (9th Cir. 2000).

## DISCUSSION

### I.    Background

The R&R sets forth the factual background, summarizing the undisputed facts. Plaintiffs object to a specific fact summarized by the Magistrate Judge, which is addressed in the analysis below; TUSD does not object to the facts relied upon in the R&R. The Court restates the facts necessary to address Plaintiffs' objections.

### A.  Corral's Sexual Assault of Jane Doe

In 2017, Jane Doe was a student at Mansfeld Magnet Middle School, where John Angel Corral was employed as a security monitor. (Doc. 61, p. 1.) Jane Doe's interactions with Corral began as small talk and high-fives. (*Id.*) Corral would make peculiar statements to her, including "You can tell me your secrets," "I'm going to miss you when you're gone," and "You are my favorite." (*Id.* at 6.) In August 2017, these interactions escalated into "side hugs" and "bear hugs." (*Id.* at 1.) During the bear hugs, Corral touched Jane Doe's buttocks almost every time, and this happened approximately every school day from August 2017 to October 2017.[1] (Doc. 61, p. 1; Doc. 46-1, p. 9.) These interactions occurred in the school hallway near the bathroom during Jane Doe's 30-minute advisory period (a time during which she could eat, use the restroom, or complete schoolwork) and only when

---

[1] Although TUSD disputed that Corral touched Jane Doe's buttocks each time he hugged her, and alleged that Corral touched her but on one occasion (Doc. 61, p. 10), the Magistrate Judge properly considered the evidence and all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. *See Karasek v. Regents of University of California*, 956 F.3d 1093, 1105 (9th Cir. 2020).

Jane Doe was alone. (Doc. 61, p. 2.)

Jane Doe's last contact with Corral occurred on October 26, 2017. (*Id.*) Jane Doe was standing on a chair just outside her classroom, hanging decorations, when Corral approached, asked Jane Doe what she was doing and simultaneously rested his hand on her inner thigh within one inch of her vagina. (Doc. 61, p. 2; Doc. 46-1, pp. 9-10.) When Jane Doe pulled away, Corral grabbed Jane Doe's earbud that was dangling, which was nowhere near where he touched her. (*Id.*) Jane Doe was then called back into the classroom. (Doc. 61, p. 2.) Prior to this incident, Jane Doe did not tell anyone about Corral's conduct. (*Id.*)

Plaintiffs D.G. and Y.G. are the parents of Jane Doe and her brother, John Doe. (Doc. 1-1, p. 3.) Plaintiffs brought this lawsuit on behalf of themselves and their children alleging state law claims and claims under 20 U.S.C. § 1681 (Title IX) and 42 U.S.C. § 1983, arising from the sexual harassment.  (*Id.* at 2-7.)

**B. Corral's History of Sexual Assault and Harassment as a TUSD Employee**

Corral has a history of harassing and sexually assaulting female students. The first reported incident occurred in January 2000, when Corral was employed as a security monitor at Pueblo Magnet High School. (Doc. 61, p. 5.) According to the school incident report, Corral "sexually assault[ed]" a female student when he "made sexual advances toward her" and "[t]ried to blackmail her for sexual favors." (Doc. 61, p. 5; Doc. 49-1, p. 17.) Corral talked to a TUSD school safety officer about this incident. (Doc. 49-1, p. 10.) It is unclear from Corral's testimony whether the safety officer was a supervisor.  (*Id.*) However, Corral was not questioned about the incident, placed on administrative leave, or disciplined in any way. (Doc. 61, p. 5.)

A second incident was reported in August 2002, again during Corral's employment at Pueblo Magnet High School. (*Id.*)  According to the police report of the incident, Corral asked a female student if she could keep a secret, as he had keys to every door in the school, if she wanted to do "something." (*Id.*)  When the student asked, "something like what," Corral stated that he wanted her to perform oral sex. (*Id.* at 5-6.) Corral also told the student that she had become "thick" over the summer, that she had "a nice a**," and that he wanted

a picture of her in a bikini. (*Id.*)  Corral then touched her stomach and the back of her thigh.[2] (Doc. 49, ¶ 6; Doc. 49-1, p. 39.) The student stated that if she hadn't moved away from Corral, he would have touched her buttocks. (Doc. 49-1, p. 39.) Corral was arrested for this incident   (Doc. 61, p. 5.) TUSD placed Corral on administrative leave pending an investigation. (*Id.* at 6.) After several weeks on administrative leave, Corral was called back to work. (*Id.*)

A third report of inappropriate conduct by Corral was received in December 2008 when Corral was employed at Hohokam Middle School. (Doc. 49-1, pp. 50-56.) The school principal initially received information that Corral had made "inappropriate sexual comments" to a 14-year-old female student. (Doc.  61, p. 6.) The student reported to law enforcement that several times throughout the past semester Corral would repeatedly make inappropriate statements such as, "you are cute" and "wait until you get older, you're going to be finer." (*Id.*; Doc. 49-1, p. 51.) The student also said that on another occasion Corral twice whispered "f**k me" in her ear while he held a condom. (Doc. 49-1, pp. 51, 58.) Multiple students corroborated these incidents and added that Corral would tell the student to "look him up" and "give him a call" when she was older. (*Id.* at 54-55.)

During the investigation of the reported harassment, more Hohokam middle-school students came forward with accounts of Corral sexually harassing students.  One student reported that during the school dance, she heard Corral tell two female students, "Damn, you guys are sexy." (Doc. 49-1, p. 54.) Next, Corral told her that she was "pretty cute" and should "go dance and show off her moves." (*Id.*) Another student reported that Corral said, "hey beautiful." (*Id.* at 55.) He then asked her if she was still a virgin and told her to "wait for him." (*Id.*) Corral was eventually arrested. (Doc. 61, p. 6.)

The principal of Hohokam Middle School issued Corral a written reprimand and placed him on administrative leave pending an investigation by TUSD's Special

---

[2] Although the R&R does not mention that Corral touched the student, the Court finds that this fact is supported by the record and relevant to the analysis of the issues. Plaintiffs' SOF refences the "inappropriate touching" (Doc. 49, ¶ 6), and TUSD did not dispute this fact in its Controverting Statement of Facts.  (*See* Doc. 53.)

Investigator. (Doc. 61, p. 6; Doc. 49-1, p. 58.) At the conclusion of the investigation, TUSD determined that Corral violated the governing board's policy regarding sexual assault and harassment towards students. (*Id.*) TUSD's Assistant Superintendent of Middle Schools, Jim Fish, recommended that Corral should "not return to Hohokam or any school" and that that he be placed "in another position that does not put him in contact with students." (Doc. 49-1, pp. 34-35.) Corral was suspended and instructed to attend a pre-termination hearing on September 1, 2009. (Doc. 61, p. 6; Doc. 49-1, p. 58.) Despite TUSD's finding that Corral violated its policy and Mr. Fish's recommendation that Corral not be placed around students or at any school, in October 2010, Mr. Fish reinstated Corral and found a school, Mansfeld Magnet Middle School, which needed a campus monitor, and where Corral would later sexually harass and assault Jane Doe. (Doc. 61, p. 2; Doc. 49-1, p. 15.)

## II.    Analysis

### A. Section 1983 Claim

TUSD argues in its motion that it cannot be liable under § 1983 because Plaintiffs cannot establish that TUSD deprived Jane Doe of a constitutional right through an official policy or custom.  Plaintiffs conceded that TUSD did not have an official policy.  The Magistrate Judge concluded that the prior incidents of Corral's misconduct were insufficient as a matter of law to establish that TUSD had a persistent and widespread custom of allowing employees accused of sexual harassment to remain in contact with students. (Doc. 61, pp. 4-7.) The Magistrate Judge explained:

> The evidence is that one person sexually harassed three female students over a period of 16 years. These incidents were too sporadic, and their number too few, for a reasonable jury to conclude that retention of sexual harassers was a custom "so 'persistent and widespread' that it constitute[d] a 'permanent and well settled [municipal] policy.'"

(*Id.* at 6.)  The Magistrate Judge cited other court decisions holding that similar numbers of incidents were insufficient to establish a custom.  (*Id.* at 6-7.)  Finally, the Magistrate noted that there was no evidence that TUSD had responded similarly to accusations of harassment against other employees.  (*Id.* at 7.)

Plaintiffs object to the Magistrate Judge's factual finding that Corral harassed only

three female students over a period of 16 years and the Magistrate Judge's legal conclusion that Plaintiffs failed to provide evidence of official action by TUSD.

### 1. Number of Incidences of Harassment

Plaintiffs assert that the Magistrate Judge erred in assessing the number of prior incidences of harassment by failing to fully consider the Sheriff's report of investigation of the 2008 claim which included multiple allegations of misconduct by multiple students that Corral sexually harassed and assaulted female students.  Plaintiffs assert that the evidence shows that Corral harassed seven female students on at least eight separate occasions. (Doc. 64, pp. 4-5; Doc. 49-1, pp. 50-56.)

TUSD argues that Plaintiffs assert these additional facts of alleged harassment for the first time in their objection.  TUSD also argues that there is no evidence to support the allegations of additional acts of harassment.  (Doc. 65, pp. 3-4.)

The Court will sustain Plaintiffs' objection as to the factual determination of the number of alleged incidences of harassment.  Plaintiffs did raise these facts in their opposition to the motion for summary judgment.  Plaintiffs referenced the Sheriff's report detailing Corral's inappropriate sexual comments to "female middle school students" (plural) in its Statement of Facts (Doc. 49, ¶ 10), and Plaintiffs attached the report of investigation as an exhibit. (Doc. 49-1, Ex. 6, pp. 43-56.)  The 2008 report shows that students reported numerous incidences of Corral sexually harassing five female students, some of whom he harassed more than once. (Doc. 49-1, pp. 17, 37-40, 50-56.) The 2000 and 2002 reports show that Corral allegedly harassed two students, bringing the total number of students Corral harassed to seven. (Doc. 49-1, pp. 16-17, 36-40.)  As students accused Corral of engaging in inappropriate conduct "several times throughout the year" (Doc. 49-1, p. 51), the frequency of Corral's conduct is undeterminable. A jury could reasonably infer that TUSD was aware of the 2008 report regarding Corral's inappropriate behavior with multiple students as TUSD conducted an internal investigation after Corral's 2009 arrest.

//

## 2.  Municipal Liability Based on Policy or Custom

Plaintiffs argue that the Magistrate Judge erred in her conclusion that TUSD did not have a policy or custom by undercounting the number of prior incidents and victims of John Corral's sexual misconduct.  Plaintiffs assert that Corral had eight instances of misconduct in eight years, not three instances in 16 years, and that this frequency distinguishes their case from the cases cited by the Magistrate Judge in support of her conclusion that the number of instances was insufficient to establish that TUSD had a custom of not terminating employees accused of sexual harassment. (Doc. 64, p. 8; Doc. 61, pp. 6-7.)

"To impose liability on a local government entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional rights; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).  "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton*, 489 U.S. at 389 (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *see Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978) (noting that municipal liability may not be imposed "solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (plaintiff must prove "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity").

"Absent a formal governmental policy, [Plaintiffs] must show a 'longstanding practice or custom which constitutes the standard procedure of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette*, 979 F.2d at

1346-47.) "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* at 918.

TUSD's inaction as to Corral is insufficient alone to establish a "persistent and widespread" custom that would constitute a district-wide policy of failing to train, supervise, or reassign employees accused of sexual harassment. *Monell*, 436 U.S. at 691. Although Plaintiffs point to the alleged eight incidents of misconduct by Corral to support a finding of a custom, Plaintiffs acknowledge that there were only three opportunities for TUSD to take action with respect to Corral. (Doc. 64, p. 8.) As explained by Magistrate Judge Aguilera, courts have held that similar numbers are insufficient to establish a custom. *See Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient); *see also Wilson v. Cook Cnty.*,742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents— do not suffice." (citation omitted)). There is also no evidence in the record that TUSD failed to act in regards to any other employee accused of sexual assault and harassment or that the governing board was aware of an informal policy to not act or formulated such a policy. *See Gillette*, 979 F.2d at 1349 (finding no municipal custom in part because there was no evidence that final policymakers formulated or were aware of the custom, and because there was not a pattern of conduct with respect to other employees). Finally, although TUSD did not fire Corral, it did act by placing Corral on administrative leave and issuing a written reprimand to him. *See McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (stating custom may be inferred if the city did not reprimand its employees for their unconstitutional violations). Thus, Plaintiffs have failed to produce evidence that TUSD's "failure to act" to remove Corral was the "traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

### 3.  Municipal Liability for Single Act of a Final Policymaker

In the alternative, Plaintiffs assert that no evidence of a policy of deliberate indifference is required to establish their claim because a single act of a final policymaker may constitute a policy of deliberate indifference.  In support, Plaintiffs cite *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998), for the proposition that "deliberate indifference may be found, absent a pattern of unconstitutional behavior, if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction . . ."  *Id.* at 1308.  Plaintiffs argue that Assistant Superintendent Jim Fish possessed the final policymaking authority to retain or fire Corral, and Fish chose to retain Corral despite knowing of Corral's propensities to commit sexual assault and harassment. (Doc. 64, pp. 9-10.) According to Plaintiffs, Fish's decision to retain Corral led to the highly predictable recurrence of Corral's sexual misconduct, for which TUSD is liable.

Plaintiffs raised this argument for the first time in their objection to the R&R. Although this Court has discretion to consider an issue raised for the first time in an objection, *Brown*, 279 F.3d at 744, the Court declines to do so. But even if the Court were to consider the argument on the merits,  Plaintiffs' argument would not succeed.

 "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 408-12 (1997), the Supreme Court hypothesized that in certain circumstances municipal liability might be imposed for a policymaker's single act of hiring a specific employee that had a history of committing constitutional violations. *Id.* In unpublished decisions, the Ninth Circuit has cited *Brown* and recognized that a municipality may be liable for a policymaker's hiring decisions or failure to fire an employee. *See Estate of Alvarado v. Shavatt*, 673 Fed. Appx. 777, 778 (9th Cir. Jan. 18, 2017) (mem. decision); *Crepea v. Cochise Cty.*, 667 Fed. Appx. 605, 606 (9th Cir. July 15, 2016) (mem. decision). To succeed under the "single decision" theory, however, Plaintiffs must first prove that Mr. Fish was a final policymaker for TUSD, for which his decision to

1    reinstate Corral could "fairly be said" to be an act of TUSD. *See Pembaur*, 475 U.S. at 480-

2    82. "[T]he identification of those officials whose decisions represent the official policy of

3    the local governmental unit is itself a legal question to be resolved by the [District Court]

4    before the case is submitted to the jury." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701,

5    737 (1989). "[W]hether a particular official has 'final policymaking authority' is a question

6    of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-25 (1988).

7            Under Arizona law, the governing board of TUSD must "[p]rescribe and enforce

8    policies and procedures for the governance of the schools that are not inconsistent with law

9    or rules prescribed by the state board of education." A.R.S. § 15-341. Plaintiffs assert that

10   the governing board delegated to Mr. Fish the responsibility to make decisions regarding

11   Corral's employment. Plaintiffs point to a 2019 governing board policy, which provides:

12   "Any determination to return an employee to employment or to terminate an employee

13   following criminal charges or a conviction shall be reviewed and approved by the

14   Superintendent." (Doc. 64-1, p. 2.)

15          There is no evidence in the record that the 2019 policy was in effect in 2009 when

16   Fish decided Corral could return to work.  Even if this policy was in effect at the time, the

17   purported delegation of power is to "superintendents," not *assistant* superintendents such

18   as Mr. Fish.  Moreover, the law is clear that "[t]he fact that a particular official—even a

19   policymaking official—has discretion in the exercise of particular functions does not,

20   without more, give rise to municipal liability based on an exercise of that discretion."

21   *Pembaur*, 475 U.S. at 481-82.  "The official must also be responsible for establishing *final

22   government policy* respecting such activity before the municipality can be held liable." *Id.*

23   at 482-83 & n.12 (emphasis added).  Here, Plaintiffs do not cite any authority or provide

24   evidence showing that Mr. Fish had the power to establish final employment policy or that

25   his decisions were unreviewable. *See Christie v. Iopa*, 176 F.3d 1231, 1236 (9th Cir. 1999)

26   (noting "courts consider whether the official's discretionary decision is 'constrained by

27   policies not of the official's making' and whether the official's decision is 'subject to

28   review by the municipality's authorized policymakers'" (quoting *Praprotnik*, 485 U.S. at

1   127)).  For all of these reasons, Plaintiffs have failed to prove that Mr. Fish was a final

2   employment policymaker under Arizona law. The Court will therefore adopt Magistrate

3   Judge Aguilera's recommendation to grant summary judgment in favor of TUSD on

4   Plaintiffs' § 1983 claim.

5          **B.  Title IX Claims**

6          The Magistrate Judge recommended granting TUSD's motion for summary

7   judgment on Plaintiffs' Title IX claims, concluding Plaintiffs cannot establish either an

8   "individual" or "pre-assault" claim.   (Doc. 61, pp. 7-8.)    Plaintiffs object to the

9   recommendation.

10          **1.  Individual Claim.**

11           In order to establish an individual claim under Title IX, Plaintiffs must prove five

12   elements:

13                First, the school must have "exercise[d] substantial control
     over both the harasser and the context in which the known
14                harassment occur[red]." Second, the plaintiff must have
     suffered harassment "that is so severe, pervasive, and
15                objectively offensive that it can be said to deprive the [plaintiff]
     of access to the educational opportunities or benefits provided
16                by the school." Third, a school official with "authority to
     address the alleged discrimination and to institute corrective
17                measures on the [school's] behalf" must have had "actual
     knowledge" of the harassment. Fourth, the school must have
18                acted with "deliberate indifference" to the harassment, such
     that the school's "response to the harassment or lack thereof
19                [was] clearly unreasonable in light of the known
     circumstances."  .  .  .  And fifth, the school's deliberate
20                indifference must have "subject[ed] the plaintiff] to
     harassment."

21

22   *Karasek v. Regents of University of California*, 956 F.3d 1093, 1105 (9th Cir. 2020)

23   (internal citations omitted).  In its motion for summary judgment, TUSD argues that

24   Plaintiffs lacks evidence sufficient to satisfy the requirements of elements two and three:

25   "actual knowledge" by TUSD of "severe, pervasive harassment." (Doc. 45, pp. 5-7.)

26          The Magistrate Judge recommended granting summary judgment on Plaintiffs'

27   individual claim because Plaintiffs failed to produce evidence that TUSD had actual

28   knowledge that Jane Doe was being harassed. The Magistrate Judge pointed to Jane Doe's

testimony that she did not report Corral's misconduct until after the final thigh-touching incident.  The Magistrate Judge rejected as irrelevant Plaintiffs' argument that TUSD had actual knowledge, based on the history of accusations against Corral, that Corral was likely to harass female students generally, citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998), in support.

Plaintiffs object to the Magistrate Judge's conclusion, arguing that TUSD knew, based on the history of accusations against Corral, that Corral was likely to harass female students. (Doc. 64, pp. 2, 6-7) Plaintiffs cite *Doe v. School Board of Broward County*, 604 F.3d 1248, 1257 (11th Cir. 2010), for the proposition that TUSD's knowledge of Corral's history of sexual harassment is relevant to establishing the actual knowledge required under Title IX.

In *Gebser*, the Supreme Court held that a school district cannot be liable under Title IX, unless an appropriate official has "actual knowledge of discrimination in the recipient's programs." *Gebser*, 524 U.S. at 290. There the Court found that a parent's report that a teacher was making inappropriate comments during class was insufficient to provide the school district with actual knowledge that the teacher was engaged in a sexual relationship with one of his students. *Id.* at 291. Although the *Gebser* Court concluded that the information provided by the parent was insufficient to alert officials to the sexual relationship, *Gebser* does not hold that the actual knowledge requirement means that the notice to the school district must be "notice of the prior harassment of the Title IX plaintiff *herself.*" *School Bd. of Broward Cty.*, 604 F.3d at 1257 (emphasis in original) (stating no circuit court has interpreted *Gebser*'s notice requirement as requiring specific notice of plaintiff's harassment). In fact, the Supreme Court "did not limit Title IX liability to a federal education funding recipient's knowledge of, and deliberate indifference to, the alleged harassment of a *particular individual*, but instead contemplated that Title IX claims could be based on the recipient's knowledge of, and deliberate indifference to, a *particular harasser's* conduct in general." *J.K. v. Arizona Bd. of Regents*, No. CV-06-916-PHX-MHM, 2008 WL 4446712 at *14 (D. Ariz. Sept. 30, 2008) (emphasis in original)

(collecting cases from other circuits).

On the evidence presented, the Court finds that a reasonable juror could conclude that TUSD had actual knowledge of Corral's assault and harassment of students. *See Davis*, 526 U.S. at 654 ("[P]etitioner may be able to show both actual knowledge and deliberate indifference on the part of the Board."). Corral's harassment in 2000 was reported and recorded in TUSD's student management information system. (Doc. 49-1, pp. 17, 33.) A letter shows that TUSD and multiple officials, including the legal department, were made aware of Corral's harassment in 2002. (*Id.* at 42.) With respect to the 2008 investigation, TUSD, the legal department, principal, legal counsel, human resources, and assistant superintendent of middle schools, were aware of allegations of Corral's sexual misconduct. (*Id.* at 58-59.) And TUSD, through its board and officials, had the authority to address the alleged discrimination, as evidenced by its exercise of that authority when it found Corral violated its policies. The Court will therefore deny TUSD's motion for summary judgment on this claim.[3]

## 2. Pre-assault Claim

To establish a pre-assault claim, a plaintiff must prove:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educations opportunities or benefits provided by the school."

*Karasek,* 956 F.3d at 1112 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). In its motion for summary judgment, TUSD argues that Plaintiffs cannot produce sufficient evidence of elements one and four: the harassment of Jane Doe was sufficiently

---

[3] In evaluating the individual claim, the Magistrate Judge did not reach TUSD's argument that the alleged harassment was not sufficiently severe and pervasive to state a claim. However, the Magistrate Judge rejected this argument in evaluating TUSD's challenge to the pre-assault claim. TUSD did not object to the Magistrate Judge's conclusion that there was a disputed issue of fact as to the severity of the harassment. This Court agrees with Magistrate Judge Aguilera's analysis.

severe and TUSD maintained a policy of deliberate indifference.[4]  The Magistrate Judge determined there was a disputed issue of fact as to the severity of the harassment, but recommended granting summary judgment because Plaintiffs failed to produce evidence that TUSD had a policy of deliberate indifference towards employee-on-student sexual harassment. (Doc. 61, pp. 11-12.)

Plaintiffs argue that the Magistrate Judge erred in concluding that Plaintiffs lacked evidence from which a reasonable jury could conclude that TUSD had a policy of deliberate indifference because the Magistrate Judge considered only three instances of misconduct by Corral instead of the eight separate instances of sexual harassment against seven female victims in eight years. (Doc. 64, pp. 3-5.) This is the essentially the same policy argument the Court considered and rejected in Section II(A)(1) above.  Because the same standards apply in determining whether an official policy or custom exists in the context of Title IX as in the context of a § 1983 claim, *see Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1177-78 (10th Cir. 2007), and for the same reasons that the Court rejected the argument previously, the Court concludes Plaintiffs fail to demonstrate that TUSD had a policy of deliberate indifference. Thus the Court will overrule Plaintiffs' objection and adopt the Magistrate Judge's recommendation to grant summary judgment on the pre-assault claim.

### C. State Law Claims

The Magistrate Judge recommends granting TUSD's motion for summary judgment as to the loss-of-consortium claims. The parties do not object to that recommendation. Accordingly, the Court will adopt the recommendation. *See Thomas,* 474 U.S. at 149; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

//

//

//

//

---

[4]  TUSD reiterated these arguments in its supplemental briefing.  (Doc. 59.)

1

2                                    **CONCLUSION**

3          **IT IS ORDERED** that the Report and Recommendation (Doc. 61) is **ADOPTED**

4   **IN PART**, as set forth in this Order.

5          **IT IS FURTHER ORDERED** that Defendant Tucson Unified School District's

6   Motion for Partial Summary Judgment (Doc. 45) is **GRANTED** as to Plaintiff's Section

7   1983 and loss-of-consortium claims, and **DENIED** as to Plaintiff's Title IX claim.

8          Dated this 30th day of November, 2020.

9

10

11   _____

12                              Honorable Jennifer G. Zipps
                                 United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28